## UNITED STATES v. ROBERT SMITH CORPORATION.

(District Court, E. D. Pennsylvania. September 24, 1924.)

No. 378.

**1. Intoxicating liquors ⬤═250.**

Libel proceeding for condemnation of liqour being penal in character, no one should be visited with consequences thereof, unless illegality is satisfactorily shown.

**2. Intoxicating liquors ⬤═250.**

Delay in acting on brewer's application for surrender of permit *held* to raise inference that brewer had decided to continue to time limit, and that possession of beer of otherwise unlawful alcoholic content was pursuant thereto.

Forfeiture Libel. Proceeding by the United States against the Robert Smith Corporation. Leave granted to submit a decree dismissing the libel.

George W. Coles, U. S. Atty., of Philadelphia, Pa., for plaintiff.

J. Paul MacElree, Francis Maneely and Ferdinand Block, all of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. This cause belongs to class 1, or possibly class 2, and the subclasses of 4 or 5, of the classification of cases given in the opinion heretofore filed, in which all the cases are discussed generally. See U. S. v. Arnholt & Schaefer Brewing Co. (D. C.) 15 F.(2d) 447. Specific fact findings are made as follows:

(1) The respondent corporation was granted a permit privilege for the production of cereal beverages, including a dealcoholizing plant. The expiration date of the permit in due course would have been December 31, 1922. On October 10, 1922, an application for renewal was made, under which the respondent was authorized to continue its production until December 31, 1923, unless the application was sooner acted upon unfavorably. On August 17, 1923, the respondent notified the Federal Prohibition Director that it had "discontinued the manufacture and sale of beverages on July 5, 1923," and accordingly returned the permit, together with the affidavit required in connection with the surrender, and asked for official action thereon. This tender of surrender was received August 18, 1923. The accompanying affidavit set forth "that all intoxicating liquors procured or possessed under permit, etc., shall be disposed of in accordance with the provisions of said permit," and added a denial of any law violations. No action was taken by the department, however, until December 10, 1923, when the respondent was notified that the bond had been canceled, but final action of revocation of the license was not taken until January 4, 1924. This revocation was in pursuance of the surrender of the license in August previous. It was not based upon any finding, or complaint even, of law violations.

(2) On November 6, 1923, the brewery premises were visited by enforcement officers and the equivalent of about 3,400 barrels of beer were found upon the premises. Most of this was contained in vats; some of it in bottles done up in cartons of 24 bottles each, which were kept in the bottling house. The quantity here was something over 3,300 cartons. An additional 1,000 cartons was found in the cellar storeroom. Samples of the contents of the vats and bottles were taken, which showed on analysis an alcoholic content expressed by figures ranging from 0.71 to 5.83. The beer showing the 5 per cent. was all taken from the vats. None of the beer in the bottles exceeded 0.76. In making this statement, we ignore the analysis of what is referred to by the chemist "as alleged ale," which is marked by him as taken from hogsheads and as having an alcoholic content of 9.49, and an analysis of beer purporting to have been taken from 58 barrels in the racking room having an alcoholic content of 5.81, for the reason that the testimony does not identify these samples.

(3) There was no direct evidence of sales, or attempted sales, made by the respondent, and no evidence of possession for the purpose of sales of liquors above the permitted alcoholic content, other than the fact of possession, and that some of the beer was in bottles contained in cartons, which might have been prepared for shipment and sale, and which was in excess of one-half of 1 per cent. in alcoholic content per volume, coupled with the statement in the surrender application that all beverages upon the premises had been disposed of.

### Discussion.

[1, 2] A judgment of condemnation is asked for by the libelant solely upon the theory that the tender of surrender of the permit by the respondent was the equivalent of the total absence of the existence of a permit. Counsel for libelant, with characteristic frankness, admits that the evidence of illegality otherwise reaches only to the dignity of a suspicion, which, however well founded, he concedes would not justify a decree of condemnation. We are left in consequence to wrestle with the sole question of whether possession of beverages exceeding the permitted limit of alcoholic content is unlawful. The answer to the question must be found in the answer to the

other question of whether or not there was an existing permit on November 6, 1923. Although the doctrine of doubts has in itself no application to a libel proceeding, none the less the proceeding is penal in its character, and the consequences are severe. It follows that no one should be visited with these consequences, unless the mind can rest with satisfaction upon a finding of illegality. In the instant case we do not feel satisfied with such finding. The long interval which elapsed between the application to surrender the permit and official action upon it affords ample room for the inference that the respondent, in despair of favorable action, decided to continue up to the time limit of the permit, which was December 31, 1923.

### Fact Finding.

(4) The respondent has not been shown to have been guilty of any violations of the law prior to December 31, 1923. We accordingly make the additional fact finding and state the conclusions of law reached as follows:

### Conclusions of Law.

(1) The permit issued to the respondent was in force November 6, 1923, and continued in effect to December 31, 1923.

(2) The possession of malt or brewed liquors or other cereal beverages exceeding one-half of 1 per cent. per volume of alcoholic content on or before November 6, 1923, was not in itself unlawful.

(3) The respondent has the right to a decree dismissing the libel, with costs. No formal decree or judgment is now entered, but leave is granted to either party to submit the draft of a decree in accordance herewith.

In view of the conclusion reached, we see no need to pass upon the questions of admissibility of evidence which we reserved; the objections to such evidence having been on the part of the respondent.